12 CV 5881 (RPP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DWAINE TAYLOR,

                                        Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CORRECTION ("DOC")
SUPERVISING WARDEN ARTHUR OLIVARI;
CHIEF OF DEPARTMENT LARRY W. DAVIS, SR.;
CHIEF OF DEPARTMENT MICHAEL HOURIHANE;
WARDEN WILLIAM CLEMONS; DEPUTY WARDEN
TURHAM GUMUSDERE; ASSISTANT DEPUTY
WARDEN EXECUTIVE OFFICER AT BXDC
JACQUELINE BRANTLEY and CORRECTION
OFFICER JOHN DOES #1-#7,

                                        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Diep Nguyen*
*Tel: (212) 356-2328*
*Matter No. 2012-033574*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT

    POINT I

        PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION SHOULD BE DENIED IN ITS ENTIRETY. ............................................................................................ 4

        I.   DEFENDANTS DID NOT HAVE A DUTY TO PRESERVE IRRELEVANT VIDEO EVIDENCE. ......................................................................................... 4

        II.  DEFENDANTS DID NOT POSSESS THE CULPABLE STATE OF MIND ........................................................ 10

        III. PLAINTIFF HAS NOT PROVEN PREJUDICE ............................................................................. 12

        IV. THE COURT SHOULD DENY PLAINTIFF HIS REQUESTED RELIEF ................................................. 15

CONCLUSION .............................................................................................................................. 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DWAINE TAYLOR,

                                  Plaintiff,          12 CV 5881 (RPP)

           -against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CORRECTION ("DOC")
SUPERVISING WARDEN ARTHUR OLIVARI; CHIEF
OF DEPARTMENT LARRY W. DAVIS, SR.; CHIEF OF
DEPARTMENT MICHAEL HOURIHANE; WARDEN
WILLIAM CLEMONS; DEPUTY WARDEN TURHAM
GUMUSDERE; ASSISTANT DEPUTY WARDEN
EXECUTIVE OFFICER AT BXDC JACQUELINE
BRANTLEY and CORRECTION OFFICER JOHN DOES
#1-#7,

                                  Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

        Defendants City of New York, Supervising Warden Arthur Olivari, Chief of Department Larry W. Davis, Sr., Chief of Department Michael Hourihane, Warden William Clemons, Deputy Warden Turham Gumusdere, and Deputy Warden Jacqueline Brantley ("defendants"), by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in opposition to plaintiff's motion for sanctions for spoliation.

### PRELIMINARY STATEMENT

        Plaintiff Dwaine Taylor (a/k/a Dusetree Taylor) brings this action pursuant to 42 U.S.C. § 1983 alleging a deprivation of his constitutional rights. He claims that he was

victimized by members of the Bloods gang on two separate occasions while housed in DOC facilities, with the acquiescence or approval of correction officers. He alleges that he suffered serious injuries because of the so-called "Program," where correction officers allegedly accorded members of the Bloods favored status. His allegations are internally inconsistent, however, and appear calculated to mislead the court into believing that this case is analogous to the Kadeem John matter, which the City recently settled.

Amongst other things, plaintiff alleges that while he was detained for a court appearance at a holding cell inside the Bronx criminal courthouse on May 24, 2011, he was assaulted by several inmates, including Batise Boyce. See Compl. [DE #1] ¶¶ 47-54. Plaintiff claims that officers at the Bronx criminal courthouse failed to protect him from the assault. Id. ¶ 55. Plaintiff further alleges that as a result of the assault, he was "covered in blood", "spitting blood out of his mouth", and "gushing blood out of his nose", yet, Officer John Doe #1 allegedly "looked right at [him] and did nothing". Id. ¶¶ 56, 59. Approximately three hours after Mr. Boyce assaulted plaintiff, plaintiff claims that he tried to grab Mr. Boyce, but Mr. Boyce hit him again, and that was when officers entered the cell, sprayed mace on plaintiff, and thereafter placed plaintiff and Batise Boyce in separate cells, terminating the incident. Id. ¶¶ 61-62. Plaintiff alleges that Boyce was a member of the Bloods gang. Id., ¶ 52. After the incident, Boyce was arrested and charged with assault. Id., ¶¶ 77-78.

Plaintiff further alleges that approximately six months later, on November 6, 2011, while housed at RNDC, he was again assaulted by members of the Bloods gang. He alleges that, at that time, members of the Bloods gang knew that he had planned to testify against Boyce for assaulting him. But even though he had "quickly learned" that the Bloods supposedly "controlled" RNDC when he was first housed there, six months earlier, see id., ¶ 45, according to

DOC records he never sought protective custody nor did he ever request to be separated from known members of the Bloods gang. He does not allege any facts suggesting the contrary, even though he claims that he "was fearful that he would be attacked again," had recurring nightmares about Boyce, and "was particularly fearful about falling asleep" in the dorms at RNDC. Id., ¶ 82. As a result of the May 24, and November 6, 2011, incidents, plaintiff brings claims against defendants: 1) a failure to intervene and/or protect claim against the individual defendants; 2) a *Monell* claim against the City of New York; and 3) a negligence claim against all defendants. Id. ¶¶ 123-137.

Plaintiff alleges that both incidents were part of the "Program" on Rikers Island. Plaintiff alleges that under the so-called 'Program," correction officers at one jail, RNDC, granted favored treatment to members of the Bloods gang, and allowed them to "beat, rob and extort whomever they please." Id., ¶ 27. Plaintiff does not allege any facts suggesting that the alleged "Program" existed anywhere, at any time, other than at RNDC. Id., ¶¶ 26-37. Although plaintiff does not allege any facts suggesting that the so-called "Program" existed in the Court pens - where the inmate population changes every day depending on who is scheduled to appear in court - he expressly claims that the first incident was also part of the "Program." He appears to base this allegation solely on the fact that he was assaulted by a member of the Bloods gang during that incident.

Consistent with plaintiff's effort to portray this case as something it is not, he now moves for an order granting severe sanctions based on his claim of spoliation of evidence, just as plaintiff in the Kadeem John case did. The facts here, however, are markedly different from those of John in every material respect. In John, plaintiff through his attorneys notified the City that he intended to sue *before* the video was destroyed or recycled in accordance with agency

practice. Here, in contrast, plaintiff did not provide notice to anyone at DOC that he intended to sue the City because of the assault by Boyce, until *after* the video was recycled in accordance with normal agency practice. In addition, in John the agency did not preserve any video, whereas in the instant case the relevant portions of the video were preserved and are available for plaintiff's use at trial.

As more fully set forth below, we submit that plaintiff's motion should be denied in its entirety.

### ARGUMENT

### PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION SHOULD BE DENIED IN ITS ENTIRETY.

A party seeking sanctions based on spoliation of evidence must prove the following: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier-of-fact could find that it would support that claim or defense." See Twitty v. Salius, 2012 U.S. App. LEXIS 1115, at *3 (2d Cir. Jan. 19, 2012) (citation omitted). Based on the record, plaintiff cannot prove any prong necessary for sanctions; therefore, plaintiff's motion should be denied in its entirety.

### I. DEFENDANTS DID NOT HAVE A DUTY TO PRESERVE IRRELEVANT VIDEO EVIDENCE.

A party has a duty to preserve evidence once it has notice that the evidence is relevant to ligation or it should have known that the evidence may be relevant to future litigation. See Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). In essence, the test that gives rise to a duty to preserve is whether a party "reasonably anticipates litigation". See

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., 685 F. Supp.2d 456, 466 (S.D.N.Y. 2010). This duty clearly arises if a party is given notice of litigation and such a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Id.

Plaintiff's motion in this instant is not based on an argument that defendants did not preserve video evidence – because they did – rather, plaintiff argues that defendants had a duty to preserve the three hours of video-recording in-between the first incident, when plaintiff was assaulted by Batise Boyce, to the second incident, when plaintiff retaliated by attempting to assault Mr. Boyce. Defendants' witness, Deputy Warden Jacqueline Brantley, testified that other than the two incidents involving plaintiff which she saved onto two separate disks, there were no other commotion inside the cell during the three hours. See Ex. A, Brantley's Dep. Tr., 65:7-14.

As Ms. Brantley testified, on May 24, 2011, the date of the incident, she reviewed the video to determine what portions, if any, would be relevant to her investigation of an inmate-on-inmate assault between plaintiff and Batise Boyce. See Ex. A, Brantley's Dep. Tr., 81:10-83:9. Ms. Brantley then saved the relevant portions to two separate disks, and thereafter, as explained in plaintiff's motion, all video-recording on May 24, 2011, was destroyed pursuant to automatic deletion. Defendants submit that they have complied with any reasonable interpretation of their obligations and preserved the relevant video evidence of the incidence. See Usavage v. Port Auth. of N.Y. & N.J., 10 Civ. 8219 (JPO), 2013 U.S. Dist. LEXIS 45600, at *28 (S.D.N.Y. Mar. 26, 2013) ("Plaintiff's counter-argument that the footage compiled by Silva contains a suspicious gap is beside the point. Silva acted under no duty to compile *all* footage, but rather under a duty to compile *potentially relevant* footage. The fact that, with perspective

adjusted by hindsight and over a year of discovery, it might be helpful for him to have preserved the disputed footage does not control.").

Plaintiff does not allege that he was assaulted by any officers or inmates during the three hours in-between the first and second incidents, and Ms. Brantley confirmed based upon her review of the tape on May 24, 2011, that no other attacks occurred. In a telling omission, plaintiff also does not allege that he sought help from any correction officer during those three hours, or that he ever asked to be taken to the clinic, and that officers refused his requests or otherwise denied him requested medical treatment. Instead, he claims that he was bleeding and otherwise visibly injured, *see* Compl. [DE #1], ¶¶ 55-56, but that correction officers in the vicinity did not *offer* him help. Photographs of plaintiff taken the day of the incident do not show any visible injury, however, and strongly rebut his claims. (A color reproduction of the photos is attached as Exhibit B.) It strains reason to believe that if plaintiff was visibly injured and correction officers were in the area as he claims, he would not have requested help from at least one of them. In these circumstances, plaintiff essentially is arguing that now, in hindsight, it *might* have been helpful to both parties to have preserved all footage - but this claim is not a basis for a spoliation motion. Id.

Plaintiff's arguments that defendants' obligation to preserve rose on May 24, 2011, the date of the incident, are flawed and should be rejected for the following reasons. As an initial matter, although plaintiff cites the Kadeem John case, defendants note that unlike the *John* case, where no video was preserved, here, it is undisputed that defendants preserved two separate videos of the May 24, 2011, incidents. Moreover, unlike Kadeem John, where plaintiff argued that defendants were on notice to preserve because of a July 12, 2010, letter from the Legal Aid

Society and plaintiff's July 28, 2010, filing of the Notice of Claim[1], here, plaintiff cannot make the same arguments because there were no letters from the Legal Aid Society and the filing of the Notice of Claim occurred well after the 20-day automatic deletion period.[2]

As the Court is aware, unfortunately, every year, inmates/detainees assault one another while they are incarcerated. Sadly, sometimes the inmate-on-inmate assaults result in serious injuries. The mere fact that inmates are injured during fights with one another, even if they are injured seriously, does not give rise to liability against correction personnel. Therefore, plaintiff's argument that he was allegedly seriously injured cannot have put defendants on notice of impending litigation, especially considering the fact that there were no communications from plaintiff's counsel to the Department of Correction requesting preservation, and the Notice of Claim and Complaint were not filed before the automatic deletion period, which arguably could have put defendants on notice of potential litigation.[3]

As one court aptly stated, when addressing similar allegations made in an employment discrimination lawsuit: "Even assuming the statements were made, just because [defendant] was aware or should have known that her statements were racially biased, it does not mean that she should have anticipated Plaintiff's filing an employment discrimination action against her that very instant . . . While the Court finds no basis to conclude that [defendant's]

---

[1] The Kadeem John incident occurred on June 26, 2010.

[2] Deputy Brantley was mistaken when she testified that the automatic deletion occurred after 60 days. But even if the automatic deletion period were sixty days, plaintiff still would not be able to prove spoliation because he did not give the City notice of his claims until July 28, 2011, at the earliest, when he filed a Notice of Claim - more than sixty days after the May 24, 2011, incident.

[3] Again, defendants note that unlike this case, where two videotapes were preserved, there were no videotapes preserved in the *John* case. Defendants are simply making this an "assuming *arguendo*" argument.

duty to preserve evidence arose [at the time the videotapes were destroyed], there is support, both legally and factually, for concluding that [defendant's] duty arose no later than the time [defendant] received Plaintiff's EEOC charge." See Curcio v. Roosevelt Union Free Sch. Dist., 283 F.R.D. 102, 108 (E.D.N.Y. 2012); see also Cornelisse v. U.S., 09 Civ. 5049 (JCF), 2012 U.S. Dist. LEXIS 37880, at *17 (S.D.N.Y. Mar. 20, 2012) ("To be sure, the Smithsonian was aware of the accident at the time that it happened and an accident report form was completed. But the occurrence of an accident is insufficient by itself to create reasonable anticipation of litigation."). Defendants submit that like *Curcio* and *Cornelisse*, the occurrence of an incident, without more, cannot lead defendants to reasonably anticipate litigation. Indeed, Ms. Brantley testified that she was surprised to hear that plaintiff had filed a lawsuit when she answered yes to the following question posed by plaintiff's counsel, Katherine Rosenfeld, Esq.: "But when you thought about the incident and you remembered what happened to [Mr. Taylor], were you surprised that he filed a lawsuit?" See Ex. A, Brantley's Dep., 123:5-9.

Plaintiff further argued in his motion that the injury to plaintiff was so severe that Ms. Brantley and other DOC staff recommended criminal prosecution against Batise Boyce, therefore, defendants should have preserved the entire videotape because they should have anticipated this litigation. First, there is no evidence on the record that the recommendation for the criminal prosecution was based on the alleged severity of plaintiff's injuries, but rather, it appears to have been based on the criminal conduct of Mr. Boyce. Second, there is also no evidence on the record that the District Attorney's Office or the Inspector General's Office ever opened an inquiry into the conduct of any officers and/or charged any correction officers with misconduct. Third, there is also no evidence on the record that the District Attorney's Office or any other entity ever requested other portions of the videotape(s) of the incident that they

deemed to be relevant to their prosecution and/or investigation into the facts of the May 24, 2011, incidents involving plaintiff. Accordingly, plaintiff's argument that the criminal prosecution of Batise Boyce should have alerted defendants to potential litigation should be rejected. There is no evidence that the criminal prosecution is based on, or somehow suggests, misconduct by correction staff, or that the prosecution required video evidence other than DEFS 88 and DEFS 89, which are attached in plaintiff's motion for the Court's review.

Finally, defendants note that while plaintiff relied on Matteo and Slovin in his motion, those cases are distinguishable from the facts in the case at bar for the following reasons. In Matteo, no video footage was retained, whereas, here, video footage was copied onto two separate disks and retained. See Matteo v. Kohl's Dep't Stores, Inc., 09 Civ. 7830 (RJS), 2012 U.S. Dist. LEXIS 32193, at *10-*11 (S.D.N.Y. Mar. 6, 2012). Therefore, in Matteo, Judge Sullivan was not confronted with a situation where tapes were preserved, as they were here. Furthermore, on the facts presented in Matteo, Judge Sullivan denied the plaintiff's motion for an adverse jury charge. The court found that "where ... severe sanctions are at issue, the movant must demonstrate that the lost information *would have been favorable* to it," id. at *12-13 (citation and internal quotes omitted; emphasis added), and because the plaintiff could not meet her burden she was only entitled to a lesser sanction (i.e., fees and costs).

In Slovin, unlike here, plaintiff's counsel contacted defendant one week after the accident and requested a video of same. See Slovin v. Target Corp., 12 Civ. 863 (HB), 2013 U.S. Dist. LEXIS 31858, at *8 (S.D.N.Y. Mar. 7, 2013). Rather than provide plaintiff with a video of the incident when it has not yet been subjected to automatic deletion at the time, defendant's counsel only produced two minutes of the video two years later, when the Court ordered defendant to do so. Moreover, in *Slovin*, sanctions were warranted because a former

employee of Target swore in an affidavit that in the normal course of business, for every incident, he is always ordered to copy twenty minutes before and after each incident, yet, only two minutes of the incident involving plaintiff were produced by Target. Therefore, it can be inferred in *Slovin* that defendant intentionally and willfully destroyed evidence in a manner that *departed* from, rather than followed, its normal business practice, and after they were contacted by plaintiff's counsel seeking same, likely because the video evidence would have demonstrated defendant's culpability. Id., at *2-7. Here, in contrast, ADW Brantley testified that she followed the agency's normal practice, and plaintiff has not adduced evidence suggesting that she did not. Slovin, therefore, is also distinguishable.

For the foregoing reasons, defendants submit that they have met their obligations to preserve the required video evidence.

## II.   DEFENDANTS DID NOT POSSESS THE CULPABLE STATE OF MIND

To possess a culpable state of mind, defendants must have destroyed evidence negligently, intentionally, or willfully. See Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). To examine whether a defendant destroys evidence with the requisite state of mind, the analysis must be one that is "case-by-case". See Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999) ("Our case-by-case approach to the failure to produce relevant evidence seems to be working. Such failures occur along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." (quotation marks and citation omitted)).

Here, as an initial matter, defendants saved evidence by downloading two videos onto two disks of the two incidents involving plaintiff on May 24, 2011. Not only did defendants preserved the relevant videotapes, but there is no evidence on the record that defendants "acted with actual or reckless in selecting the footage". See Usavage, 2013 U.S. Dist.

LEXIS, at *27 ("Nor has Plaintiff adduced any evidence that even remotely supports the conclusion that [defendant] official acted with actual malice or recklessness in *selecting footage*.") (emphasis added). Merely because in 20/20 hindsight, plaintiff quarrels with what footage was saved does not give rise to a culpable mental state, especially when the entire May 24, 2011, videotape was erased pursuant to automatic deletion procedures. Id., at *26 ("the Court discerns no malice or recklessness in the fact that potentially relevant footage ultimately was erased, since the creation and retention of footage pursuant to ordinary PATH procedures is driven by operational and technical factors entirely independent of this case."); see also Gutierrez-Bonilla v. Target Corp., 08 Civ. 3985 (JS) (AKT), 2009 U.S. Dist. LEXIS 116958, at *15 (E.D.N.Y. 2009) ("by recycling the tapes before the instant litigation was filed and in accordance with their normal business practices, Defendants cannot be said to have done so with the requisite 'culpable state of mind.'") (citations omitted).

Additionally, defendants did not act negligently as they were "not on notice of the potential salience of the footage". Id., at *27. As discussed in Point I *supra*, plaintiff did not write to the Department of Correction, filed a Notice of Claim, or filed a complaint in Court prior to the automatic deletion date of the May 24, 2011, videotape. "The fact that, with perspective adjusted in hindsight and over a year of discovery, it might be helpful for [defendant] to have preserved the disputed footage does not control." Id., at *28. On May 24, 2011, as discussed in Point I *supra*, Ms. Brantley was investigating the incidents involving plaintiff with no knowledge of a lawsuit, and, indeed, she was later surprised to learn that plaintiff has brought a lawsuit. Therefore, "[a]t the time, on the basis of reasonably available information, [defendant did not] act[] with a mental state that would support a sanction for spoliation." Id.

Plaintiff's citation to Judge Engelmayer's Order (Plaintiff's Exhibit G) is distinguishable from this case because there, the Court opined about the lack of preservation protocols that were allegedly not put in place *since the filing of the lawsuit* (emphasis added). Here, there are no allegations that documents or videos were not properly preserved and/or disclosed to plaintiff once plaintiff brought suit.

Accordingly, for the foregoing reasons, defendants respectfully submit that they did not act with the requisite mental state that would justify sanctions.

### III.   PLAINTIFF HAS NOT PROVEN PREJUDICE

Merely because evidence was destroyed does not automatically mean that sanctions are warranted. See Pension Comm. of the Univ. of Montreal Pension Plan, 685 F. Supp. 2d at 467. "The innocent party must show that the evidence would have been helpful in proving its claims or defenses -- *i.e.*, that the innocent party is prejudiced without that evidence. Proof of relevance does not necessarily equal proof of prejudice." Id. Moreover, in the context of a spoliation motion, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002). It requires the moving party to "show through extrinsic evidence that the destroyed evidence would have been favorable to its case." See Curcio, 283 F.R.D. at 112; Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J., 601 F. Supp. 2d 566, 570 (S.D.N.Y. 2009) ("For the purpose of spoliation, 'relevant' means that the evidence must be of the sort that a reasonable jury could find harmful to the spoliator's case.").

Here, notwithstanding plaintiff's claim that he was inside the cell spitting blood out of his mouth and wobbling on his feet, the allegations are belied by the videotapes (DEFS 88 and DEFS 89) which do not show any visible injuries to the plaintiff, either immediately

following the assault (DEFS 89), or approximately three hours after the assault (DEFS 88). Indeed, when questioned as to whether she observed any injuries on plaintiff's jaw in DEFS 88, which was three hours after Mr. Boyce assaulted plaintiff, Ms. Brantley testified as follows: "It looks like his mouth is open which is the reaction you get when you hit someone with OC: The nose running and mouth open." See Ex. A, Brantley's Dep. Tr., 143:1-22. Moreover, colored photographs taken of the plaintiff's face after the incidents do not show any visible injuries, including either a visibly broken jaw or bleeding on his face as plaintiff claims. See Ex. B, Photographs of Plaintiff, dated May 24, 2011.

After being shown DEFS 89 at her deposition, Ms. Brantley testified that after plaintiff was assaulted by Batise Boyce, plaintiff went into the "back-right corner," and then plaintiff emerged from the corner to stand in front of the pen for approximately three hours before he attempted to assault Batise Boyce. See Ex. A, Brantley's Dep. Tr., 68:1-69:16. The video that is labeled as DEFS 89 shows plaintiff being punched by Mr. Boyce, plaintiff going into the "back-right corner" immediately following the punch, and then plaintiff emerging from that corner to stand in front of the cell. See Ex. A, Brantley's Dep. Tr., 141:5-142:7.

It is defendants' contention that in the intervening three hours between when plaintiff was first assaulted by Mr. Boyce to the time when plaintiff attempted to assault Mr. Boyce, plaintiff stood in front of the cell with his back to the gate, and that he was not assaulted by anyone else, was not visibly injured, nor did he inform any officer of his injuries. See Ex. A, Brantley's Dep. Tr., 68:1-69:16, 141:5-142:7. Plaintiff contends that several other things happened in-between those three hours which the video would have shown, but, significantly, nowhere in plaintiff's complaint or motion did he allege that he made any complaints to any correction officers about his assault or injuries. Moreover, plaintiff has not proffered any

evidence, other than his mere words, to establish that the video containing the intervening three hours would have shown what he claims it shows, and that the evidence would have been favorable to the claims he brought in the complaint. In fact, defendants submit that the video would have been favorable to them as it would have shown that nothing happened in the intervening three hours, and that plaintiff did not notify any officers that he had been assaulted. See Curcio, 283 F.R.D. at 112; see also Simoes v. Target Corp., 11 Civ. 2032 (DRH) (WDW), 2013 U.S. Dist. LEXIS 83896 (E.D.N.Y. June 14, 2013), at *20-*21 ("Even assuming, however, that the video preceding plaintiff's fall would have indicated how the pink liquid ended up on the floor or how long it remained there, such additional footage could have been favorable to either party's case. For instance, while it is possible that the recycled video would have shown that a customer spilled the liquid on the floor hours before the incident, it is equally possible that the video would have shown that the spill occurred just moments before plaintiff's fall. The same holds true for the other reasons articulated by Simoes for why the recycled video is supposedly relevant [For example, the recycled video could have shown that: (1) Target employees passed by the area where plaintiff fell moments before the incident and observed that the floor was free of any foreign substances; and (2) no other customers slipped or fell while traversing the same area where plaintiff's incident occurred.]."); Matteo, 2012 U.S. Dist. LEXIS at *14 (In this situation a video of the accident could potentially have some probative value. But Plaintiff has not articulated what the video might show that would be relevant to establishing liability beyond or different from what is depicted in the photographs taken after the accident.").

Accordingly, plaintiff has not been prejudiced as a result of the destruction of the videotape.

## IV.    THE COURT SHOULD DENY PLAINTIFF HIS REQUESTED RELIEF

As set forth in points I, II, and II *supra*, plaintiff has failed to prove any element necessary to support sanctions against defendants.  Accordingly, plaintiff's requested relief should be denied.  See Pension Comm. of the Univ. of Montreal Pension Plan, 685 F. Supp. 2d at 467 ("for more severe sanctions -- such as dismissal, preclusion, or the imposition of an adverse inference -- the court must consider, in addition to the conduct of the spoliating party, whether any missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence.").

Here, plaintiff has sought the severe sanctions of preclusion and an adverse inference, which means plaintiff must prove prejudice.  As set forth in points I, II, and III *supra*, plaintiff has failed to do so; therefore, plaintiff's request for preclusion and an adverse inference must be denied.  There is no prejudice to plaintiff here as defendants have saved two relevant portions of the incidents involving plaintiff on May 24, 2011.  Merely because a party is unhappy with the extent of what is saved does not warrant sanctions.  If that were true, then, in every case where there is video evidence, all a party has to do in order to successfully move for spoliation is to claim that the preservation of "a bit more of the footage" would have shown some other information, and as discussed more fully above, that is not (and cannot be) the law in this Circuit.  At trial, plaintiff is certainly free to argue anything he wants with respect to what he believes other video evidence will show, but, defendants submit that for the purposes of this spoliation motion, they have complied with their internal procedures and with the law in preserving the relevant video evidence.  Defendants further submit that plaintiff's requested relief is without merit and his claims of prejudice are merely conclusory.  Finally, plaintiff's request for attorney's fees should be denied in its entirety as his motion for spoliation is not meritorious.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion for sanctions for spoliation in its entirety, together with such costs, fees and further relief as the Court deems just and proper.

Dated:   New York, New York
         June 28, 2013

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the
                                     City of New York
                                    Attorney for Defendants
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 356-2328

                              By:   _____
                                    Diep Nguyen
                                    Assistant Corporation Counsel

cc:   All parties (By ECF)